UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DIVISION

| | | |
|---|---|---|
| THROUGHPUTER, INC., | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | No.  1:22-CV-1095-DAE |
| | § | |
| AMAZON WEB SERVICES, INC., | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE DAVID A. EZRA
       UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Amazon Web Services, Inc.'s Motion to Dismiss

Under Rule 12(b)(6) for Failure to State a Claim, Dkt. 20; and all related briefing.

After reviewing these filings and the relevant case law, the undersigned recommends

that the District Court deny Amazon's motion.

## I.       BACKGROUND

This is a patent case, in which Plaintiff ThroughPuter, Inc. asserts that

Defendant Amazon Web Services, Inc., infringed its U.S. Patent Nos. 11,347,556 and

11,385,934, issued in 2021 (the Patents-in-Suit).  Amazon moves to dismiss asserting

that ThroughPuter has inadequately pleaded that it is the "inventor" of the patents

in issue sufficient to state a claim.

Amazon argues that when ThroughPuter filed the Applications for the Patents-

in-Suit, it copied verbatim claim language from published patent applications

Amazon filed years before, U.S. Patent Nos. 10,282,330 and 10,223,317 (the Amazon

Patents) and concealed its copying of Amazon's claims from the Patent Office.

1

Amazon alleges that ThroughPuter rewrote the titles, abstracts, and claims of ThroughPuter's earlier patent applications, and then falsely represented to the Patent Office that its amendments added no new subject matter. Amazon argues that because ThroughPuter did not "invent" what its patents claim, the claims of the Patents-in-Suit are invalid under Section 101 of the Patent Act, which limits the issuance of patents only to "whoever invents." Therefore, Amazon alleges, ThroughPuter's claims should be dismissed pursuant to Rule 12(b)(6).

ThroughPuter relies on its patent applications from 2013 and 2014, arguing that its Patents-in-Suit claim a priority date that is three years earlier than the earliest priority date of the Amazon Patents. ThroughPuter argues that because it disclosed its claimed inventions years before the applications that resulted in the Amazon Patents were filed, ThroughPuter's Patents-in-Suit qualify as prior art to the Amazon Patents.

Additionally, ThroughPuter argues that it followed well-established, typical, and accepted practices in obtaining the Patents-in-Suit, through using continuation[1]

---

[1] "A continuation patent is filed to pursue additional claims to an invention disclosed in an earlier application (the parent application) that has not yet been issued or abandoned." *In Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 283 n.34 (D. Del. 2013) (citing *Harmon, et al., Patents and the Federal Circuit*, 10th ed., § 18.1(f), 2011). Further, a continuation patent application contains "the same specification[s]" as its parent application and "claims the same invention" as its parent application. *Id.* "The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application[,]" MPEP § 201.07 ; *see also Intel Corp. v. Negotiated Data Solutions, Inc.*, 703 F.3d 1360, 1366 (Fed. Cir. 2012) (emphasizing that continuation patents are "based on the same disclosure as" previous patents and by definition " 'can claim no new invention not already supported in the earlier issued patents'"). However, "it is the claims of the patent which define the invention," and "there is no prohibition on broadening claims in continuation patents." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1166-67 (Fed. Cir. 2018).

applications. And, ThroughPuter alleges, the only regulation Amazon accuses ThroughPuter of violating does not cover the Patents-in-Suit and would not have applied to ThroughPuter's prosecution even if it did.

Moreover, ThroughPuter maintains, Amazon's argument is really one that the Patents-in-Suit lack written description support under 35 U.S.C. § 112(a), which is a question of fact, unresolvable on a motion to dismiss. ThroughPuter argues that Amazon attempts to recast its written description argument as a lack of inventorship argument under 35 U.S.C. § 101, unsupported by any case citations utilizing inventorship as a basis for dismissal.

## II.      LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.   DISCUSSION

### A.   Factual Background

The parties do not dispute the following summary of the underlying facts. In 2016, Amazon filed two U.S. patent applications: No. 15/279,232, filed on September 28, 2016, and No. 15/280,624, filed on September 29, 2016. Dkt. 20-1; Dkt. 20-4, U.S. Pat. No. 10,223,317; Dkt. 20-5, U.S. Pat. No. 10,282,330. The '232 and '624 applications were published, and thus became publicly available, in March 2018, and issued in March and May 2019 as U.S. Pat. Nos. 10,223,317 and 10,282,330. *Id.* The Amazon Patents are titled "Configurable Logic Platform" and "Configurable Logic Platform with Multiple Reconfigurable Regions". *Id.*

The two ThroughPuter Patents-in-Suit are related and identify on their face a series of five parent applications, the earliest of which was filed in 2014. Dkt. 20-12, at 1-2;  Dkt. 20-13, at 1-2. All five parent applications share the same specification and bear an identical title, "Concurrent Program Execution Optimization." Dkt. 20-6, at 9-37; Dkt. 20-7, at 3-31; Dkt. 20-8, at 8-37; Dkt. 20-9, at 32-61; Dkt. 20-10, at 1-30.

In August and September of 2021, ThroughPuter filed two new patent applications in the parallel processing family, which issued as the Patents-In-Suit. Dkt. 20-12, at 1; Dkt. 20-13, at 1; Dkt. 1-1; Dkt. 1-2. As filed, the new applications included the same specification as the prior parallel processing patent applications, but now had a different title: instead of "Concurrent Program Execution Optimization," the title became "Configurable Logic Platform with Reconfigurable

5

Processing Circuitry." Dkt. 1-1; Dkt. 1-2; Dkt. 20-14, at 54 (showing title of "Concurrent Program Execution Optimization"), 45 (showing new title of "Configurable Logic Platform with Reconfigurable Processing Circuitry"); Dkt. 20-15, at 19, 10. ThroughPuter then filed an amendment and changed the abstracts and claims of the parent specification in what Amazon alleges was an effort to copy and appropriate the inventions in Amazon's '330 and '317 patents.

In June 2014 ThroughPuter filed U.S. Application No. 14/318,512. Dkt. 25, at 7. This application issued as U.S. Patent No. 9,448,847 on September 20, 2016. *Id.* The 2021 Patents-in-Suit claim priority to two provisional applications, the first of which ThroughPuter filed two provisional patent applications in August 2013. *Id.* The Patents-in-Suit also claim priority to a non-provisional application filed June 2014. *Id.* ThroughPuter asserts that the non-provisional application includes the same specification as the Patents-in-Suit. ThroughPuter relies on its 2013 and 2014 filings, asserting it was the first to invent, and, accordingly, ThroughPuter's patents are prior art to the Amazon Patents, conceived of, and constructively reduced to practice, four years before the Amazon Patents published. *Id.*

Amazon replies that ThroughPuter's 2021 application differs from its 2021 application in that is substantially changed the titles, abstracts, and claims, to what it argues is an entirely different invention. Dkt. 28 at 6. Thus, it argues, ThroughPuter is not the "inventor" of the patented technology, the patents are ineligible for patenting and invalid pursuant to § 101 and its infringement claims should be dismissed. *Id.*

6

### B.     Technology In Issue

Amazon asserts that its patents are directed to resolving security issues associated with the use of Field Programmable Gate Arrays. Dkt. 20-4, at Abstract, 1:61-2:20; Dkt. 20-5, at Abstract, 1:65-2:34. FPGAs are integrated circuits that can be programmed after deployment to perform different functions. Dkt. 20-4, at 1:61-2:8. Programming an FPGA configures the physical structures of the chip, called configurable logic blocks, to perform a desired function. *Id.* at 2:24-28; Dkt. 20-5, at 3:51-62. FPGAs can perform their programmed functions much faster than software running on a general-purpose processor that cannot be reconfigured for each desired function. *Id.* at 2:21-40. Accordingly, FPGAs can be used as hardware accelerators to speed up functions that would otherwise be performed by software. *Id.*

The Amazon patents address security issues that arise when FPGAs are offered as part of a cloud computing service. *Id.* at 1:5-14; 2:9-20. Security issues may arise if one user's configurable logic (*i.e.*, the specific functions programmed in an FPGA by one user) is overwritten or modified by another user, or otherwise interferes with the other user programs running on the same servers. *Id.* at 2:9-20. To address these security problems, the Amazon patents describe and claim a system in which the user's reconfigurable logic within an FPGA is mediated by "host logic" controlled and provided by the cloud provider. *Id.* at 2:41-3:3. This ensures that the user's reconfigurable logic does not interfere with the rest of the system and the other applications running on the shared cloud server and prevents reconfiguring the FPGA itself. *Id.*

7

ThroughPuter's parent applications disclose and claim a system for concurrently executing a collection of programs in parallel in a multiprocessor computer. Dkt. 20-11, U.S. Pat. No. 9,448,8474. The identical abstracts explain that the purported invention is "[a]n architecture for a load-balanced groups of multi-stage manycore processors shared dynamically among a set of software applications." Dkt. 20-11, at Abstract; Dkt. 20-6, at 42; Dkt. 20-7, at 36; Dkt. 20-8, at at 6; Dkt. 20-9, at 63; Dkt. 20-10, at 32 (Abstracts in parent applications).

The "Summary" of the invention states that "[a]n aspect of the invention provides systems and methods for arranging secure and reliable, concurrent execution of a set of internally parallelized and pipelined software programs on a pool of processing resources shared dynamically among the programs." Dkt. 20-11, at 2:15-19; Dkt. 20-6, at 11; Dkt. 20-7, at 5; Dkt. 20-8, at 11, Dkt. 20-9, at 35, Dkt. 20-10, at 4. The parent patents claim systems and methods for optimizing concurrent program execution, such as a "system for prioritizing instances of a software program for execution ...." Dkt. 20-11, at 21:17-24:21.

The description and seven figures describe a system for dynamically assigning tasks from multiple applications executing in parallel to available processing cores in a multiprocessor system: "[T]he multi-stage manycore processor system 1 is shared dynamically among tasks of multiple application programs (apps) and instances (insts) thereof, with, for each of the apps, each task located at one of the (manycore processors) based processing stages 300." *Id.* at 10:23-27. The specification lists

FPGAs among a list of software and hardware including CPUs, GPUs, DSPs, and ASPs that could be used in implementing the multiprocessor system. *Id.* at 20:12-18.

In August and September 2021, ThroughPuter filed two new applications in the parallel processing family, which issued as Patents-in-Suit. Dkt. 20-12; Dkt. 20-13; Dkt. 20-14, at 54, 45;  Dkt 20-15, at 19, 10. As filed, the new applications described the technology outlined above but changed the titles to "Configurable Logic Platform with Reconfigurable Processing Circuitry." *Id.* ThroughPuter then filed an amendment and changed the abstracts and claims of the parent specification which Amazon alleges was to copy and appropriate the inventions in Amazon's '330 and '317 patents. Dkt. 20-14, at 3; Dkt. 20-15, at 29.

### C.    Copying Claims

Amazon argues that the Patents-in-Suit are invalid because it is "apparent from the face of ThroughPuter's pleadings" that it did not invent the subject matter claimed in these patents but stole it from Amazon. 35 U.S.C. § 101. In support of this claim, Amazon relies upon the language in the various patent applications, which it alleges shows that ThroughPuter's 2021 applications are not based on its prior applications, while copying, in many cases verbatim, the claims language in Amazon's applications. Dkt. 20, at 12-14. Amazon relies on the similarity of the language in the patent claims, which all parties acknowledge are similar, and the temporal primacy of its filings to prove "invention." *Id.*

ThroughPuter responds that it was well within its rights to seek continuation patents, claiming it disclosed inventions that cover Amazon's accused products. Dkt.

25, at 22 (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874

(Fed. Cir. 1988)). It argues that:

> ThroughPuter's continuation applications that matured into the Patents-in-Suit were filed to cover AWS's accused product and to ensure that ThroughPuter protected the space it is entitled to protect. In doing so, ThroughPuter focused on the way Amazon claimed the accused product in patent applications. And so long as ThroughPuter's patents complied with the conditions for patentability—including the written description requirement—ThroughPuter was free to claim its invention as it saw fit.

*Id.* at 23.

> 1.   History

First, Amazon points to the history of various applications in its effort to

establish copying. It argues that ThroughPuter's five parent applications are directed

at parallel processing of multiple applications in a microprocessor system, while the

asserted claims in the two later patents are directed to resolving security issues

arising specifically from the use of FPGAs within a cloud system. Amazon argues

there is no reference to resolving security issues arising specifically from the use of

FPGAs within a cloud system in the earlier applications, and that therefore, the

claimed prior applications are unrelated, showing a lack of inventorship.

Amazon further argues that the assertion that ThroughPuter's President,

Mark Sanderson, qualifies as the "inventor" is a legal conclusion, and that

ThroughPuter has failed to plead any facts showing invention. Amazon asserts it is

inconceivable that ThroughPuter independently came up with the inventions years

before and failed to describe them in their initial application; but then filed their

applications years after Amazon filed its applications, largely changing the subject matter from the prior applications to match Amazon's. Dkt. 20, at 17.

ThroughPuter responds that its 2013 and 2014 filings clearly disclose an FPGA-enabled cloud computing system that includes numerous benefits, including security benefits, which is the focus of the Patents-in-Suit. Dkt. 25, at 9-10. ThroughPuter relies on its June 2014 U.S. Application No. 14/318,512, which issued as U.S. Patent No. 9,448,847 on September 20, 2016. Dkt. 20-6, at 10. ThroughPuter asserts that Amazon's argument that while its Patents "address security issues that arise when FPGAs are offered as part of a cloud computing service," and ThroughPuter's patents, including the 2014 Application are "directed to completely different subject matter," is belied by ThroughPuter's 2014 application. Dkt. 25, at 4.

ThroughPuter argues its 2014 application starts by identifying a prior art problem in then-conventional cloud computing systems that embodiments of ThroughPuter's disclosed inventions would solve, noting "significant challenges to the scalability of the networked utility ('cloud') computing model." Dkt. 20-6, at 10, ¶ 003.3. ThroughPuter's 2014 application further states: "To address the challenges per above, there is a need for inventions enabling scalable, multi-application dynamic concurrent execution on parallel processing systems, with high resource utilization efficiency, high application processing on-time throughput performance, as well [as] built-in, architecture based security and reliability." *Id.* at ¶ 004. ThroughPuter argues that these same disclosures appear in the Patents-in-Suit. Dkt. 1-1, at 2:9-24; Dkt. 1-2, at 2:10-26. ThroughPuter's 2014 application then explains that "aspects of

the invention involve application-program instance specific hardware logic resources for secure and reliable ITC [intertask communication] among tasks of application program instances hosted at processing stages of a multi-stage parallel processing system." Dkt. 20-6, at 13, ¶ 0010. ThroughPuter asserts that a cloud computing system is an example of a parallel-processing system. Dkt. 25-2, 2014 application, Appendix A at 2.4.  Thus, ThroughPuter argues, its 2014 Application discloses and discusses enhanced security features as part of the disclosed cloud computing system.

ThroughPuter further argues that its earlier 2014 application also discloses an embodiment, which uses "programmable logic (FPGA) implementation" in which "the core type for any core slot 520 is furthermore reconfigurable per expressed demands of its assigned app-task, e.g. per [1], Appendix A, Ch. 5.5." Dkt. 20-6, at 36, ¶ 0069. The 2014 application's reference to "Appendix A, Ch. 5.5" refers to a 2014 provisional application, which is incorporated by reference into ThroughPuter's 2014 application as well as the disclosure of the Patents-in-Suit. *Id.* at 9; Dkt. 1-1, at 1:21-22; Dkt. 1-2, at 1:22-23. That appendix includes a 51-page description of a functional cloud computing system designed by the named inventor on the Patents-in-Suit, including a detailed discussion of FPGAs. Dkt. 25-2, at 39-43. ThroughPuter argues that this is a clear and detailed description of the use of FPGAs in a cloud computing system, despite Amazon's claim that ThroughPuter mentions FPGAs only as part of a "laundry list" of computer processors that could be used in connection with the disclosed cloud computing system. Dkt. 25, at 10. And ThroughPuter asserts, it has pleaded and points to evidence that its named inventor, Mark Sandstrom, was

knowledgeable about the use of FPGAs in a cloud computing system despite claiming them in the Patents-in-Suit, submitting that he published an article and gave a presentation on the subject prior to Amazon's 2016 patent applications. Dkt. 1, at ¶¶ 38, 39, 42; Dkt. 1-9.

Amazon seems to be requesting the undersigned to make a factual determination of copying based merely on the pleadings. While it might be unlikely that two entities independently invented similar or identical technology, for reasons explained below, the undersigned finds that it is improper to dismiss ThroughPuter's claims based on 25 U.S.C. § 101. ThroughPuter has adequately pleaded inventorship in its Complaint and factual issues preclude a determination of copying based solely on the pleadings before the Court.

2.      Failure to Make Required Disclosures to the Patent Office

Amazon argues that further evidence of ThroughPuter's copying is its failure to disclose that it copied Amazon's claims from the Patent Office. Amazon relies on the Manual of Patent Examining Procedure, asserting that it requires the applicant to identify the source of the copied claims: "Where claims are copied or substantially copied from a patent, 37 CFR § 41.202(a) requires the applicant, at the time he or she presents the claim(s), to identify the patent and the numbers of the patent claims." MPEP § 2001.06(d) (9th ed. Rev. 10.2019, June 2020).

Both the MPEP and binding federal regulations impose this duty of disclosure, requiring that "[e]ach individual associated with the filing and prosecution of a patent application" must "disclose to the Office all information known to that individual to

be material to patentability as defined in this section." MPEP 2001.04 (9th ed. Rev. 10.2019, June 2020); 37 C.F.R. § 1.56 (same). Amazon argues that ThroughPuter copied Amazon's claims and failed to disclose that fact to the Examiner in direct violation of Patent Office requirements.

ThroughPuter responds that it followed Patent Office procedure in filing its applications. Dkt. 25, at 11.  It argues that 37 CFR § 41.202(a) applies in an interference[2] proceeding, which were eliminated in 2013, and is not applicable here. Dkt. 25, at 15. The undersigned concurs that 37 CFR § 41.202(a) is inapplicable in this case. The undersigned finds that, while the duty to disclose "all information known to that individual to be material to patentability as defined in this section" is broad, and the similarity of ThroughPuter's Patents-in-Suit claims' language is similar to Amazon's, it is unclear that the undersigned may impute knowledge of Amazon's patents' language to ThroughPuter without making an impermissible factual finding at this juncture. *See Kewazinga Corp. v. Microsoft Corp.*, 558 F. Supp. 3d 90, 119-20 (S.D.N.Y. 2021), reconsideration denied, 1:18-CV-4500-GHW, 2022 WL 4236301 (S.D.N.Y. Sept. 14, 2022) (discussing whether circumstantial evidence was sufficient for a jury to infer knowledge of a competing patent). Thus dismissal on this basis is improper.

### 3.    Misrepresentations to the Patent Office

Amazon argues, as evidence of ThroughPuter's copying, that ThroughPuter expressly misrepresented to the Patent Office that the "amendments [it sought to the

---

[2] The 2013 America Invents Act replaced "interferences" with "derivation proceedings." 35 U.S.C. § 135(a).

parent applications] introduce[d] no new matter." Dkt. 20 at 10. Amazon asserts that ThroughPuter's amendments entirely replaced the titles, the abstracts and the claims of the Patents-in-Suit, transforming the focus of its patents from parallel processing of multiple applications in a multiprocessor system, to resolving security issues on an FPGA platform—a completely different technology—unrelated to any disclosure in ThroughPuter's parent applications. *Id.* Thus, Amazon argues, ThroughPuter's statement that its amendments introduced "no new matter" is, on its face, false, and evidences ThroughPuter's deliberate intention to hide its copying from the Patent Office. Amazon argues that because of this misrepresentation, the Patent Office incorrectly allowed the applications without knowing the true source of their claims, ultimately resulting in the issuance of the Patents-in-Suit.

ThroughPuter opposes these assertions. With regard to the Abstract, ThroughPuter argues its patent included an Abstract, in compliance with 37 C.F.R. § 1.72, and as required by the Manual of Patent Office Examination and Procedure at § 608.01(b). Dkt. 25-2. And ThroughPuter argues that MPEP § 608.01(b)(I)(D) requires that that "review of the abstract for compliance with [USPTO] guidelines is the responsibility of the examiner." *Id.* ThroughPuter argues that because the examiner reviewed its abstract, it is in compliance with applicable law, and it did not conceal any alleged theft of Amazon's patents.

ThroughPuter also avers that it revised the title of the Patents-in-Suit during prosecution, as is expressly permitted by USPTO rules. Dkt. 25, at 13 (stating the applicable regulations require the patent have a technically accurate and descriptive

title, and the Examiner should require substitution of a new title if it is not). ThroughPuter puts the onus on the Examiner to require the patent title was properly descriptive and accurate, claiming the Patents-in-Suit are directed to a configurable logic platform, and therefore appropriately titled "Configurable Logic Platform With Reconfigurable Processing Circuitry." *Id.*

With regard to the "no new matter" representation to the Patent Office, ThroughPuter again relies on the Examiner's determination, asserting that the Examiner is required to examine a continuation application to determine whether the application introduces new matter, and, if it does, require the applicant to delete any claim that the application is a continuation of a prior application. Dkt. 25, at 14. ThroughPuter asserts that the Examiner did not do so here and must have not found new matter. *Id.* Additionally, ThroughPuter points out that "new matter" in the context of a patent application pertains only to whether a continuation application is entitled to the earlier filing date to the application to which it claims priority. *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 98 F.3d 1563, 1579-80 (Fed. Cir. 1996). And whether matter is "new" is judged against the disclosure in the prior application, which ThroughPuter asserts the Examiner did not question in this instance.

The undersigned is unconvinced by ThroughPuter's reliance on the Patent Offfice's examination to establish it did not defraud or make material misrepresentations in the course of its patent applications. *See In re NTP, Inc.*, 654 F.3d 1268, 1278 (Fed. Cir. 2011). Nevertheless, whether ThroughPuter misled the

examiner is an issue that may not be resolved at the pleadings stage. *See Maquet Cardiovascular LLC v. Abiomed, Inc.*, 627 F. Supp. 3d 72, 81 (D. Mass. 2022). And, a patent is presumed valid and the party asserting invalidity has the burden of persuasion to show the contrary by clear and convincing evidence. *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). Thus, the undersigned declines to dismiss ThroughPuter's claims on this basis.

4.     Whether 35 U.S.C. § 101 Is a Proper Basis for Dismissal

Amazon has based its motion to dismiss on 35 U.S.C. § 101 "inventorship," arguing that the pleadings establish that ThroughPuter did not invent the technology on which its Patents-in-Suit are based, but copied its patent claims from Amazon's. Dkt. 20. ThroughPuter argues that questions regarding whether ThroughPuter's parent applications contain supporting disclosure of its Patents-in-Suit sufficient to support inventorship is controlled by 35 U.S.C. § 112(a), and not 35 U.S.C. § 101. Dkt. 25, at 16-18. And this 35 U.S.C. § 112(a) argument is not properly resolved on a motion to dismiss. *Id.* at 16.

ThroughPuter points to the test for whether a claim complies with the written description support requirement of § 112(a): "[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). "[T]he test requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art," and "[b]ased on that inquiry, the

17

specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Id.*

ThroughPuter argues that 35 U.S.C. § 101 is an inapplicable standard, and that whether a claim complies with a written description requirement is a question of fact and not properly addressed on a motion to dismiss. *Id.* ThroughPuter points out that Amazon has not cited any cases finding a patent claim should be dismissed pursuant to 35 U.S.C. § 101, for a specification's failure to disclose what an inventor claimed to invent.

Amazon replies that ThroughPuter's reliance on its 2014 parent application for the notion that ThroughPuter "was the first to invent," is insufficient to show inventorship because "its disclosure has nothing to do with the asserted claims." Dkt. 28, at 6 (citing Dkt. 25, at 4 and relying on 2014 application as evidence of inventorship). Amazon argues ThroughPuter does not dispute that it changed the titles, abstracts and claims from what appears in its 2014 application when it filed the applications for the asserted patents in 2021. Amazon asserts these changes show that any invention ThroughPuter might have possessed in 2014 is different from the invention claimed in its asserted patents. *See Rsch. Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 872 (Fed. Cir. 2010) (reversing a summary judgment finding by a district court regarding patent validity based on priority).

"The written description requirement of 35 U.S.C. § 112 reflects the basic premise of the patent system, *viz.*, that one discloses an invention and, if it also fulfills the other requirements of the statute, one obtains a patent … the case law reflects

the need that the disclosure show that one actually made the invention that one is claiming, *i.e.*, that it possessed the invention as claimed." *Regents of the Univ. of Minn. v. Gilead Scis., Inc.*, 61 F.4th 1350, 1355 (Fed. Cir. 2023). "The purpose of the written description requirement is to prevent an applicant from later asserting that he invented that which he did not." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003). To receive "the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571 (Fed. Cir. 1997). Original disclosure may not be relied upon unless it "constitute[s] a full, clear, concise and exact description" of the invention claimed in the patent to one of ordinary skill. *In re Wertheim*, 646 F.2d 527, 538-39 (CCPA 1981). The primary considerations in a written description analysis are factual and must be assessed on a case-by-case basis. *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991).

The undersigned finds that Amazon's arguments bolster ThroughPuter's point that Amazon is improperly asserting a claim of lack of inventorship instead of a disclosure claim. Amazon's states there is "nothing in its 2014 Parent Application that discloses the inventions it copied nearly word-for word from Amazon's patents." Dkt. 28, at 7. The undersigned finds that Amazon is asserting a disclosure claim, which is inappropriately addressed on a motion to dismiss.

At a minimum, Amazon is asserting that the failure to disclose is circumstantial evidence of copying, an evidentiary conclusion not properly addressed

within the framework of a motion to dismiss, but better addressed at summary judgment. "[A] complaint should not be dismissed [under Rule 12(b)(6)] for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting patent invalidity has the burden of persuasion to show its claims by clear and convincing evidence. *Tech. Licensing Corp.,* 545 F.3d at 1329. Amazon has not met its burden based merely on the inadequacies of ThroughPuter's pleadings.

Amazon also cites *Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1360 (Fed. Cir. 2010), in support of its § 101 arguments. In *Leviton*, the Federal Circuit reviewed whether, after a dismissal of a patent suit by the plaintiff, an award of fees and cost to the defendant by the district court, based upon "inequitable conduct before the PTO" was proper. *Id.* (citing *Epcon Gas Sys.Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002)). The court found it was, after analyzing whether the applicant "made an affirmative misrepresentation of material fact" which was required to show inequitable conduct. *Id.* (citing *Cargill v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007)).

The court determined that the failure to disclose to the examiner the two separate applications, with two separate sets of inventors, who both claimed to make the same invention, was "material to inventorship." *Id.* ("Neither an inventor nor his counsel may graft claims onto an earlier specification if those claims do not reflect what the inventor actually invented at the time of the earlier application."). The court

20

further stated that, "had the examiner been aware that different Leviton employees each claimed to be first inventors of the same subject matter recited in the same claims, it would have raised serious questions regarding inventorship—an issue that is clearly material to patentability." *Id.* The court held the failure to disclose was a material fact, and therefore the award of fees for "inequitable conduct before the PTO" was proper. *Id.*

The undersigned finds *Leviton* has limited application in the instant case. *Leviton* analyzed whether certain failures to provide information to the PTO qualified as a "misrepresentation of material fact" related to inventorship and did not invalidate a patent based on § 101 or dismiss a patent infringement case based on failure to establish inventorship related to those misrepresentations. Moreover, *Leviton* assessed § 101 in the context of a patent examination, and not as a separate claim before the district court. Notably the Federal Circuit stated, "[e]ven if the examiner might have concluded that DiSalvo and Zeigler invented the claimed subject matter, the nearly identical claims raise a substantial inventorship question that would have required additional investigation by the examiner. Thus we hold that Leviton's failure to disclose the Germain application … was material." *Id.* The undersigned declines to import this materiality analysis into the context of a motion to dismiss, effectively invalidating ThroughPuter's Patents-in-Suit, based on the pleadings.

And the above quote supports the necessity of further factual inquiry into the inventorship issue.  *Leviton* does not support a finding that a patent is invalid based

upon a lack of "inventorship" based on §101; rather, it supports the argument that when there are two inventors of the same subject matter recited in the same claims, further factual inquiry is required to resolve the issue of inventorship. Dismissal under 12(b)(6) is improper on this basis.

To the extent Amazon argues that ThroughPuter did not conceive of the claimed inventions, the Court does not have an adequate record[3] before it to decide that issue. Additionally, ThroughPuter has at least pleaded that Sandstrom invented what is claimed. Dkt. 1, ¶¶6, 38-42, 63, 107. The Complaint alleges that:

> ThroughPuter developed hardware implemented dynamic resource management functionality … for use with multicore processor arrays dynamically shared among multiple concurrent applications, preferably to be deployed on FPGA processors … the manycore processor array involves a fabric of reconfigurable cores that can be on-demand programmed to supply the needed mix or match of hardware accelerators. ThroughPuter's technology provided a cloud computing solution that enables accelerated processing speeds across multiple application programs while at the same time optimizing processing resource utilization.

Dkt. 1, at ¶ 36. ThroughPuter has adequately pleaded its claims sufficient to survive a Rule 12(b)(6) motion to dismiss.

## IV.   RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Motion of Defendant Amazon Web Services, Inc.'s Motion to Dismiss Under Rule 12(b)(6) for Failure to State a Claim, Dkt. 20. The reference of this motion to the undersigned is **CANCELED**.

---

[3] Inventorship is a question of law based on underlying facts. *In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018).

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 24, 2023.

_____

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE