UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **THROUGHPUTER, INC.,** § | |
| *Plaintiff* § | |
| § | |
| v. § | No. 1:22-CV-01095-DAE |
| § | |
| **AMAZON WEB SERVICES, INC.,** § | |
| *Defendant* § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE DAVID A. EZRA
    SENIOR UNITED STATES DISTRICT JUDGE

Plaintiff ThroughPuter, Inc. moves to strike Defendant Amazon Web Services, Inc.'s twelfth affirmative defense, which alleges inequitable conduct on the part of ThroughPuter. Dkt. 72. The District Judge referred ThroughPuter's motion to the undersigned for report and recommendation. For the reasons stated below, the undersigned recommends that the District Judge deny ThroughPuter's motion.

## I.   BACKGROUND

The undersigned set out the basics of the parties' claims in the report and recommendation to the District Judge addressing Amazon's motion to dismiss. Dkt. 43, at 1-3, 5-6. Much of the same ThroughPuter conduct that Amazon cited in support of its motion to dismiss Amazon now cites in support of its inequitable-conduct affirmative defense.

In sum, ThroughPuter contends that Amazon infringed its U.S. Patent Nos. 11,347,556 and 11,385,934, issued in 2021 (the Patents-in-Suit). Dkt. 48. These

1

patents claim priority dates to parent applications ThroughPuter filed in 2013 and 2014. Dkt. 20-12, at 1-2; Dkt. 20-13, at 1-2. After ThroughPuter filed its parent applications, but before ThroughPuter prosecuted the amendments giving rise to the Patents-in-Suit, Amazon filed two U.S. patent applications in 2016, the '317 patent, titled "Configurable Logic," and the '330 patent, titled "Configurable Logic Platform With Multiple Reconfigurable Regions." Dkt. 20-1; Dkt. 20-4. The applications for these patents ('232 and '624, respectively) were published, and thus became publicly available, in March 2018. *Id.* Additionally, Amazon's '995 patent, also titled "Configurable Logic Platform With Multiple Reconfigurable Regions," issued on July 7, 2020 (filed in March 2019 as the '007 application and published in July 2019). Dkt. 69, at 26. Together, the undersigned refers to these three patents as the "Amazon Patents."

Amazon's inequitable-conduct affirmative defense asserts that when ThroughPuter filed the 2021 applications for the Patents-in-Suit, it copied verbatim claim language from published patent applications for the Amazon Patents and concealed the existence of these patents and its copying of their claims from the Patent Office. Dkt. 69, at 25-34. Amazon further alleges that ThroughPuter rewrote the titles, abstracts, and claims of ThroughPuter's earlier patent applications and then falsely represented to the Patent Office that its amendments added no new subject matter. *Id.* at 34-35.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Alum. v. Chem. Sales, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). What constitutes an insufficient defense depends on the nature of the claim for relief and the defense in question. *EEOC v. First Nat'l Bank of Jackson*, 614 F.2d 1004, 1008 (5th Cir. 1980). The trial court has "ample" discretion when considering a Rule 12(f) motion. *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979).

### B. Inequitable Conduct

Inequitable conduct bears on an issue unique to patent law. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). Thus, the Court applies the law of the Federal Circuit when determining whether inequitable conduct has been pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity" under Rule 9(b). *Ferguson*

3

*Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003).

"[T]o plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the USPTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the USPTO." *Exergen*, 575 F.3d at 1328-29.

The USPTO imposes a duty on "[e]ach individual associated with the filing and prosecution of a patent application" to disclose information material to patentability. 37 C.F.R. § 1.56(a); *see also* Manual of Patent Examining Procedure § 2001.06(c). Specifically, each named inventor, "each attorney or agent who prepares or prosecutes the application," and "every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application" owes a duty of disclosure to the USPTO. 37 C.F.R. § 1.56(c). However, the Federal Circuit rejected adopting materiality as it is defined in USPTO Rule 56 because it sets such a low bar. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292, 1295 (Fed. Cir. 2011); 37 C.F.R. § 1.56. Instead, materiality is

measured by a "but-for" analysis. *Id.* at 1291. To assess materiality, "the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* In determining patentability, courts should give claims their broadest reasonable construction, using a preponderance of the evidence standard. *Id.* at 1292. "Information cumulative of other information already before the Patent Office is not material." *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 1000 (Fed. Cir. 2007).

"A reasonable inference [of intent] is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5. The inference of deceptive intent must be reasonable and drawn from the pleading's allegations of underlying facts. *Id.* This pleading standard is lower than that required to prevail on the merits. *Id.* (noting that to prevail on the merits, an accused infringer must prove both materiality and intent by clear-and-convincing evidence, and that the inference must be the single most reasonable inference to meet the clear-and-convincing standard). Importantly, "intent and materiality are separate requirements." *Therasense*, 649 F.3d at 1290 (citing *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003)). The two requirements should not fall on a "sliding scale," as a "court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Id.*

### III. DISCUSSION

Amazon's inequitable-conduct affirmative defense, set out in 10 pages of Amazon's 35-page answer, accuses ThroughPuter of (1) concealing the existence of

issued Amazon Patents from the USPTO during the prosecution of the amendments contained within the Patents-In-Suit, Dkt. 69, at 31-32; (2) deceiving the USPTO by copying language from the issued Amazon Patents without informing the office, Dkt. 69, at 25-35; and (3) misrepresenting that its amendments added "no new matter" to the asserted patents, *id.* at 34. ThroughPuter primarily argues that Amazon insufficiently pleads the materiality of these facts—that the affirmative defense fails to demonstrate that "but for" this allegedly improper conduct by ThroughPuter, the patents would not have issued. *See* Dkt. 72, at 7 (arguing in its motion to strike that Amazon "is unable to identify 'how' the Examiner's assessment of the allegedly withheld or misrepresented material would have prevented the patents-in-suit from issuing"). While some or all of ThroughPuter's arguments may carry the day on the merits, the undersigned finds that Amazon's affirmative defense does not fall short of the pleading requirement for inequitable conduct.

### A. ThroughPuter's Failure to Disclose the Existence of Amazon Patents

ThroughPuter's first argument challenges Amazon's allegation that ThroughPuter's failure to disclose the Amazon Patents during prosecution amounted to inequitable conduct. Dkt. 72, at 7-15. Amazon's affirmative defense states that "ThroughPuter and its patent counsel concealed … the existence of the [Amazon Patents] from the Patent Office during prosecution of the applications that issued as the asserted patents." Dkt. 69, at 32. Amazon goes on to explain in more detail:

> 20. ThroughPuter's prosecution counsel was aware of the Amazon's '330 patent or patent application publication No. 2018/0089119 at least by

6

> August 31, 2021, when it filed the '098 application that issued as the '556 patent.
>
> 21. However, ThroughPuter never disclosed the existence of Amazon's issued '330 patent to the Patent Office during prosecution of the application that issued as the '556 patent. Nor did ThroughPuter disclose that the claims it was seeking to get allowed by the Patent Office were drafted to copy and track the earlier-filed and issued claims from Amazon's '330 patent. …
>
> 23. ThroughPuter never informed the USPTO that the new patent claims it presented in the '098 patent application or that ultimately issued in the '556 patent had "substantial identity" with Amazon's '330 patent claims.
>
> 24. ThroughPuter's prosecution counsel was aware of the Amazon's '317 patent or patent application publication No. 2018/0089132 at least by September 9, 2021, when it filed the '926 application that issued as the '934 patent. …
>
> 26. ThroughPuter never informed the USPTO that the new patent claims it presented in the '926 patent application or that ultimately issued as the '934 patent had "substantial identity" with Amazon's '317 patent claims.
>
> 27. ThroughPuter's prosecution counsel was aware of the Amazon's '995 patent or patent application publication No. 2019/0213155 at least by July 7, 2022, when it filed the '657 application that issued as the '682 patent. …
>
> 29. ThroughPuter never informed the USPTO that the new patent claims it presented in the '657 patent application or that ultimately issued as the '682 patent had "substantial identity" with Amazon's '995 patent claims.

*Id.* at 32-34.

ThroughPuter does not dispute its awareness of Amazon's applications, nor does it dispute that it did not disclose the existence of the issued Amazon Patents themselves. *See* Dkt. 72, at 7-8. Instead, ThroughPuter points out that it *did* cite a publication of the patent application that eventually issued as the '330 patent—the '119 publication—and that ThroughPuter's omission of the patent itself from the prior

7

art, therefore, was immaterial. *Id.* at 8-9. ThroughPuter further notes that the examiner included the '119 publication in a list of references (presumably) considered during the prosecution. *Id.* ThroughPuter goes on to point out that the language of the relevant claims in the '119 publication tracks the claim language in the Amazon Patents almost identically, and, therefore, any failure to omit a reference to the patent itself was immaterial. *See* Dkt. 72, at 14 ("'A reference that is simply cumulative to other references does not meet the threshold of materiality that is predicate to a holding of inequitable conduct.'" (quoting *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576, 1583 (Fed. Cir. 1996))). Accordingly, ThroughPuter argues, Amazon's affirmative defense fails as a matter of law and should therefore be struck here at the pleading stage. *Id.* at 15.

Amazon responds that ThroughPuter's omission of the Amazon Patents from the prior-art references was material and that the patents were not cumulative of the '119 publication. Dkt. 77, at 11-17. As for the materiality of the omission, Amazon argues that but for ThroughPuter's omission of the patents, the examiner would not have issued the Patents-in-Suit, because "if the examiner knew of Amazon's patents … the Examiner would not have issued patents with the same claims in the earlier-issued Amazon patents." Dkt. 69, at 34. As for the alleged cumulative nature of the Amazon Patents vis-à-vis the '119 publication, Amazon argues that the patents themselves are not cumulative because had the examiner known that the same invention described in the Patents-in-Suit was already disclosed in the already-issued Amazon Patents (as opposed to the non-issued '119 publication), the examiner would

8

not have issued the Patents-in-Suit. Dkt. 77, at 13. Amazon contends this problem was further compounded by ThroughPuter's failure to disclose that it had copied language from the Amazon Patents. *Id.*

The undersigned cannot conclude at this stage of the case that the affirmative defense is foreclosed as a matter of law such that it should not be litigated on the merits. Much of what ThroughPuter argues is based on assumptions regarding what the examiner considered, or how he or she "plausibly" considered it. *See, e.g.*, Dkt. 79, at 7 ("This single limitation [in which the claim language in the publication varied from the patent] does not plausibly provide AWS with a basis to allege inequitable conduct based on an alleged failure to disclose the Amazon Patents corresponding to the '119 Publication's disclosure."). The undersigned agrees with Amazon that the detailed allegations in its affirmative defense sufficiently explain who, what, when, where, and how ThroughPuter's failure to disclose the Amazon Patents was material to the examiner's decision to issue the Patents-in-Suit. Moreover, ThroughPuter's own motion points out that the claim language in the Amazon Patents differs from some of the claim language used in the '119 publication. The undersigned finds that these differences are arguably material, at least for the purpose of assessing whether this affirmative defense is sufficiently pleaded.

For all these reasons, the undersigned cannot conclude that the reference to the '119 publication excuses ThroughPuter's failure to reference the Amazon Patents as a matter of law. The undersigned therefore recommends that the District Judge deny ThroughPuter's motion to strike on this basis.

B.  **ThroughPuter's Failure to Disclose Its Copying of the Amazon Patents**

The parties' arguments regarding ThroughPuter's alleged copying largely track their arguments addressing ThroughPuter's failure to disclose the Amazon Patents. Amazon's affirmative defense states that "ThroughPuter admittedly copied claims of earlier-filed Amazon patents, grafting those claims onto its own patents while concealing its copying from the Patent Office," Dkt. 69, at 25 (emphasis omitted), and ThroughPuter's failure to disclose this copying "was material because if the examiner knew of … ThroughPuter's copying of the subject matter from Amazon's patents, the Examiner would not have issued patents with the same claims in the earlier-issued Amazon patents," *id.* at 34. In a table (taken from ThroughPuter's own complaint) and in the body of the affirmative defense, Amazon sets out numerous examples in which the Patents-in-Suit mirror claim language from the Amazon Patents. *Id.* at 26-32. It goes on to allege, with respect to each, that ThroughPuter failed to disclose its copying of the Amazon Patents' claim language. *Id.* at 33.

ThroughPuter does not dispute these facts. Instead, ThroughPuter argues that Amazon's defense has no basis in law. Dkt. 72, at 16-18. ThroughPuter contends because the "genesis" of the Patents-in-Suit is irrelevant, it was not required to disclose the alleged copying, citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988). *Id.* at 16; *see also id.* (citing *Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 455 F. Supp. 2d 608, 641 (S.D. Tex. 2006), for the proposition that "[u]nder *Kingsdown*, 'the "source" of, or reason for, the amendment

is termed "irrelevant" to patentability'"). In *Kingsdown*, the Federal Circuit observed that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application." *Kingsdown*, 863 F.2d at 874. ThroughPuter argues that because the "genesis" of Patents-in-Suit's claim language is irrelevant, ThroughPuter's copying cannot, as a matter of law, be a but-for inequitable cause for the patents' issuance. Dkt. 72, at 16.

Amazon responds that "ThroughPuter cannot reasonably claim that the examiner would have allowed the [Patents-in-Suit] if it had determined that ThroughPuter's named inventor did not actually invent what it claims to have invented." Dkt. 77, at 21 (citing 35 U.S.C. § 101). As for ThroughPuter's contention that its copying is irrelevant, Amazon argues that ThroughPuter misses the point— while the *reason* for ThroughPuter's amendments might not be relevant to patentability, ThroughPuter's copying the Amazon Patents and passing them off as its own goes to the heart of whether ThroughPuter was entitled to issuance of the Patents-in-Suit under section 101 of the Patent Act, and ThroughPuter's failure to disclose bears on that determination. *Id.* at 22.

In *United Cannabis Corp. v. Pure Hemp Collective, Inc.*, the Federal Circuit addressed an inequitable-conduct argument based on failure to disclose copying similar to the one asserted by Amazon here. 66 F.4th 1362, 1369 (Fed. Cir. 2023)

11

("Pure Hemp points out that UCANN's prosecution counsel copied and pasted portions of Whittle and another prior art reference into the '911 patent application. She did not disclose Whittle to the PTO. In Pure Hemp's view, this undisclosed copying and pasting is inequitable conduct."). While the court ultimately rejected the plaintiff's theory, it did so on the merits. *Id.* at 1369-70. And the court's reasoning rested primarily on the fact that the district court failed to make "specific findings that the copied prior art was material." *Id.* at 1370.

This reasoning demonstrates that, at the very least, Amazon's inequitable-conduct defense on this basis is not foreclosed as a matter of law. And having already concluded that the Amazon Patents themselves were material prior art, *supra* Part III.A, the undersigned finds that Amazon's inequitable-conduct affirmative defense sufficiently pleads but-for causation as to ThroughPuter's failure to disclose its copying of that prior art.

### C. ThroughPuter's Alleged Misstatement That the Amendments Contained "No New Matter"

Finally, ThroughPuter argues that Amazon cannot allege inequitable conduct based on ThroughPuter's alleged misstatement that the applications for the Patents-in-Suit contained "no new matter." Dkt. 72, at 18-19. Amazon's affirmative defense on this point states that ThroughPuter made a "material misrepresentation with specific intent to deceive" by informing the examiner that its amendments during prosecution of the patents-in-suit "introduce[d] 'no new matter'" (the "new matter" being the language copied from the Amazon Patents). Dkt. 69 at 34; *see also id.* at 25 (stating ThroughPuter "knowingly and affirmatively misrepresent[ed] to the Patent

12

Office that its amendments added no new matter to the applications"). Further explaining the materiality of this alleged misrepresentation, Amazon states that "upon examination, the Examiner would have seen the new matter copied from Amazon's patents, which '[u]nder black letter patent law' would have 'necessarily sunk any claim of priority.'" Dkt. 69, at 34-35 (quoting *Sonos, Inc. v. Google LLC*, No. 3:21-cv-07559, Dkt. 274 at 2 (N.D. Cal. Oct. 6, 2023)).

ThroughPuter's motion to strike argues (1) "whether an application introduces new matter depends on whether there is written description support for the newly introduced claims in the originally filed specification—an issue the Examiner considered in allowing ThroughPuter's patents," and (2) Amazon's affirmative defense fails to allege that this misstatement was a but-for cause. Dkt. 72, at 18-19. As for the second point, the undersigned disagrees. The quoted language at the end of the preceding paragraph sufficiently states that this omission was a but-for cause of the patents' issuance.

As to the first point, ThroughPuter argues that the examiner presumably considered the written-description and that if the examiner had concluded that the applications included new matter, he or she would have issued a "new matter rejection." *Id.* at 19. And because no such rejection issued as to the Patent-in-Suit, the examiner must have concluded there was no new matter. *Id.* Moreover, ThroughPuter continues, even if Amazon were correct, this would only be a basis for finding the Patents-in-Suit are invalid, not a basis for finding inequitable conduct. *Id.*

Amazon responds first that ThroughPuter's reliance on a presumption that the examiner reviewed the claims for support is misplaced. Dkt. 77, at 18; *see In re NTP, Inc.*, 654 F.3d 1268, 1278 (Fed. Cir. 2011) (rejecting claim that examiner "implicitly" found priority, concluding that "[w]hether an examiner considered an issue is context-specific, and here, there is no evidence the examiner *actually* considered" the matter (emphasis added)); *see also id.* ("Whether the examiner actually considered this issue can only be determined by reviewing the prosecution history. The history here fails to support NTP's contention that the examiner made such a considered judgment.").

The undersigned finds that the same reasoning in *NTP* applies here. The undersigned has already concluded that the reference to the '119 publication alone was not enough to presume examiner knowledge sufficient to foreclose Amazon's defense as a matter of law. *Supra* Part II.A. The record at this stage does not sufficiently demonstrate that "the examiner actually considered this issue." *NTP*, 654 F.3d at 1278. Accordingly, "[t]he history here fails to support [ThroughPuter]'s contention that the examiner made such a considered judgment." *Id.* The parties may discover more when they litigate this question on the merits, and ThroughPuter may prevail in the end, but the undersigned concludes that ThroughPuter reads too much into this "presumption" to secure victory as a matter of law at this stage of the case.

And while ThroughPuter may be correct that the new-matter question may also bear on the written-description requirement, that does not necessarily mean that a party's allegedly concealing the existence of new matter in an application can't also give rise to an inequitable-conduct claim, and ThroughPuter's authority does not hold

14

otherwise. The undersigned concludes that Amazon's affirmative defense on this basis sufficiently states the alleged misrepresentation, that it was made with intent to deceive the examiner, and that had it not been made, the outcome of ThroughPuter's applications would have been different. Accordingly, ThroughPuter's motion to strike Amazon's inequitable-conduct affirmative defense on this basis should be denied.

## IV. CONCLUSION

The undersigned concludes that Amazon's inequitable-conduct affirmative defense "contain[s] sufficient factual allegations from which it can be reasonably inferred that the omissions or misrepresentations made by [ThroughPuter] were but-for material to the PTO." *Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:09-CV-00386-EAK, 2012 WL 275920, at *3 (M.D. Fla. Jan. 31, 2012) (citing *Therasense*, 649 F.3d at 1292). As the court observed in *Resonant Sensors Inc. v. SRU Biosystems, Inc.*, "[ThroughPuter]'s quarrel is not with defective pleadings, but with how the Court should ultimately determine the numerous facts alleged." No. 08-CV-01978-M, 2010 WL 11530761, at *4 (N.D. Tex. June 8, 2010).

## V. RECOMMENDATION

For all of the foregoing reasons, the undersigned **RECOMMENDS** that the District Judge **DENY** ThroughPuter's motion to strike, Dkt. 72.

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous,

conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 9, 2024.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE